IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division



FILED
MAY 2 5 2017
CLERK, U.S. DISTRICT COURT
NORFOLK, VA

UNITED STATES of AMERICA,

v.  Criminal No. 4:17cr17

ALEXANDER SANTIAGO,

Defendant.

## OPINION & ORDER

This matter came before the Court upon Alexander Santiago's ("Defendant's") Motion to Suppress, filed April 14, 2017, wherein Defendant requests that the Court suppress "all evidence recovered from searches of Mr. Santiago's person, his phone, and his residences as such statements and evidence were obtained in violation of the Fourth Amendment to the United States Constitution." Doc. 14. The Government filed a Response on April 20, 2017. Doc. 17. On May 10, 2017, the Court convened a hearing, heard evidence and argument on the Motion, and ruled from the bench. The Court **DENIED** Defendant's Motion and now issues this Opinion and Order setting forth the reasons for its ruling in further detail.

### I. FACTUAL BACKGROUND

Detective Eric Kempf of Newport News, currently assigned to the Drug Enforcement Administration ("DEA") task force in Hampton, testified that he was the case agent for the DEA's surveillance of Defendant. He monitored phone calls related to two (2) undercover buys of heroin from Defendant and related to arranging a third buy. After the first and second purchases, his informant arranged for a delivery of eight (8) ounces of heroin to Williamsburg

1

Outlet Mall on January 5, 2017. Detective Kempf testified that the task force arranged for a traffic stop on I-64 on January 5, 2017, because they were unsure when Defendant would have the heroin on him. They believed that once he was past I-295 in New Kent County, he was committed to heading toward Williamsburg and likely had the heroin on him. Detective Kempf testified that the purpose of using a traffic stop was to ensure safety because Defendant was less likely to react in an unsafe manner to a traffic stop on the highway.

Officers Jeffrey Turlington and David Phillips of the same task force testified regarding their surveillance of Defendant in Richmond on January 5, 2017, including observing him leaving Richmond as a passenger in a beige Chevy Tahoe. They briefed Sergeant Mason Edwards ("Sergeant Edwards") and Trooper Christopher Page ("Trooper Page") of the Virginia State Police regarding Defendant's background, including the prior purchases and the arranged third purchase. Virginia State Police ("VSP") Trooper Kyle Jackson ("Trooper Jackson") testified that Sergeant Edwards relayed that information to him, Trooper Page, Trooper Jamal Johnson ("Trooper Johnson"), and Trooper Heath Miller. Trooper Page confirmed he was at the task force briefing, and Trooper Johnson confirmed he was at a later briefing.

Trooper Johnson stopped the beige Chevy Tahoe in which Defendant was a passenger for a traffic infraction around mile marker 212 on I-64 on January 5, 2017. The driver was a man named Andrew Brydie ("Brydie"), and Defendant was a passenger. Trooper Johnson was seeking to stop Defendant because he knew about the two (2) prior sales and that Defendant was en route to Williamsburg to sell heroin. He testified that he stopped the vehicle when he saw it following a silver pick-up in front of it too closely, in violation of Va. Code § 46.2-816 (2017).

When he approached the vehicle, Trooper Johnson smelled marijuana in the vehicle, and he asked Brydie to exit the vehicle and accompany him back to the patrol car, which Brydie did.

While Trooper Johnson and Brydie were talking, Trooper Page brought a narcotics dog to the vehicle, and the dog gave a positive alert for drugs between the doors on the passenger's side of the vehicle on the second pass. One of the troopers then asked Defendant to exit the vehicle.

Trooper Jackson arrived on scene after Trooper Johnson had pulled the vehicle over on the side of the road. He searched the vehicle for any hidden compartments. After not finding any heroin but knowing that Defendant intended to sell heroin, he decided to search Defendant directly. He testified that he found a large bulge between Defendant's two rear pockets. He shook Defendant's waist band, at which point the bag fell lower in the pants. Fearing that the heroin had fentanyl, he decided to remove it right then before it could harm Defendant or one of the officers involved. He obtained latex gloves from one of the other troopers, unzipped Defendant's pants, and reached in where he found a pocket on the bottom of the underwear, underneath the genitalia region of the underwear, that contained a large bag with three smaller bags inside of it. He then gave the bags to Detective Kempf. He testified that he did not perform a cavity search, both because it would be improper on the side of the road and because he did not need to perform such a search after locating the drugs.

Trooper Jackson also testified that he performed an additional search, which was not a strip search, of Defendant at a rest stop subsequent to the initial search on the side of the road. This additional search was a search for weapons before taking Defendant to prison. He found nothing additional on Defendant.

## II. LEGAL STANDARDS

### A. Warrantless Arrest and Probable Cause

"It is well-settled under Fourth Amendment jurisprudence that a police officer may lawfully arrest an individual in a public place without a warrant if the officer has probable cause

to believe that the individual has committed, is committing, or is about to commit a crime." United States v. Dickey-Bey, 393 F.3d 449, 453–54 (4th Cir. 2004) (citations omitted). This extends to circumstances where an officer has probable cause to believe that "even a very minor criminal offense" was committed in his presence. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (finding sufficient probable cause to uphold warrantless arrest for Defendant who failed to wear seatbelt, as required by Texas law).

Probable cause to justify an arrest exists where "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979) (listing cases); see also Dickey-Bey, 393 F.3d at 453.

**B.   Search Incident to Arrest**

A search incident to arrest is a well-recognized exception to the warrant requirement of the Fourth Amendment. DeFillippo, 443 U.S. at 35; United States v. Robinson, 414 U.S. 218 (1973); Chimel v. California, 395 U.S. 752, 762–63 (1969). Law enforcement officers may search "the arrestee's person and the area 'within his immediate control'" following a lawful custodial arrest, provided such a search is conducted "substantially contemporaneous with the arrest." United States v. Currence, 446 F.3d 554, 556–57 (4th Cir. 2006). "The constitutionality of a search incident to an arrest does not depend on whether there is any indication that the person arrested possesses weapons or evidence. The fact of a lawful arrest, standing alone, authorizes a search." DeFillippo, 443 U.S. at 31.

## III. ANALYSIS

Defendant raised three arguments in his Motion to Suppress. First, Defendant argued that there was no reasonable suspicion that justified the traffic stop. Doc. 15 at 3–5. Second, he contended that there was no particularized suspicion supporting the initial search of his person. Id. at 5–6. Finally, Defendant he asserted that the officer's subsequent searches of his person were warrantless strip searches. Id. at 6–8.

The Court **FOUND** that there was probable cause to stop the Defendant and search him based on the troopers' awareness of his prior heroin sales and the purpose of his trip to Williamsburg. The Court observed that the evidence was inconclusive about the reasonableness of the traffic stop, as the video angle made it difficult to determine whether the Tahoe was truly following another vehicle too closely. The reasonableness of the traffic stop is not a basis to suppress the evidence, though, because of the Court's finding regarding probable cause. The troopers' knowledge of Defendant's drug transactions gave them probable cause to stop and arrest the Defendant at any time and to search him as part of that arrest.

The Court also **FOUND** that Trooper Jackson's search of Defendant was not a strip search or otherwise unreasonable. Defendant did not dispute that the drugs were in a pocket on the outside of his underwear. Obtaining drugs from a pocket sown on to the outside of underwear does not amount to a strip search, as it does not involve the exposure of any genitalia or other such unreasonable actions. The Court also **FOUND** Trooper Jackson's testimony that he did not perform any more invasive search to be credible. Trooper Jackson testified that he did not even remove Defendant's belt, only unzipping the pants to reach in and obtain the drugs from the underwear pocket. Those facts do not amount to a strip search because they do not involve the removal of his pants, let alone his underwear. Beyond that testimony, several witnesses

testified that the stop and search were conducted on the side of the highway to ensure the safest possible stop. The Court **FOUND** that the explanation for the location of the search, that a traffic stop on the side of the highway would be safer than other stops in Richmond, Williamsburg, or elsewhere, was a reasonable explanation. Trooper Jackson further testified that he removed the drugs from Defendant's underwear immediately rather than waiting for a more private searching area because he was concerned about the risk of fentanyl in the heroin harming Defendant or the officers during transportation of Defendant. The Court **FOUND** Trooper Jackson's explanation for his immediate removal of the drugs on the side of the highway to be reasonable. Fentanyl is a legitimate safety concern because it causes harm through direct skin contact.

Thus, based on the Court's findings, there is no basis on which to suppress the evidence.

### IV. CONCLUSION

For the reasons stated herein, the Court **DENIED** Defendant's Motion to Suppress, Doc. 14.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
May 25, 2017