**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | |
| ALEXANDER SANTIAGO, | Case No. 4:17-cr-17 |
| Defendant. | |

## OPINION & ORDER

Before the Court is Defendant Alexander Santiago's Motion to Appoint Counsel (ECF No. 108) and Motion for Compassionate Release (ECF No. 99). For the reasons stated below, the motions are **DENIED**.

## I.     BACKGROUND

The defendant was convicted of Conspiracy to Distribute and Possess with Intent to Distribute Heroin, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count I); Distribution of Heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count II); Distribution of Heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count III); and Possession With Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) (Count IV). ECF No. 36. The Honorable Henry Coke Morgan, Jr. sentenced the defendant to 120 months of imprisonment on Count I and 84 months of imprisonment on Counts II, III, and IV, all to be served

concurrently. ECF No. 50 at 2. The defendant is scheduled to be released on August 21, 2025.[1]

The defendant filed an initial motion for compassionate release (ECF No. 93), *pro se*, on February 22, 2021. ECF No. 93. Thereafter, the Honorable Roderick C. Young, to whom this case was previously assigned, appointed counsel to represent the defendant, directed counsel to file a motion for compassionate relief on the defendant's behalf, and ordered that the motion would supplant the motion the defendant had previously filed on his own. ECF No. 95 at 2. The defendant's appointed counsel filed the new motion on November 6, 2021. ECF No. 99. The government filed a response in opposition on November 24, 2021. ECF No. 101. The defendant, on his own, subsequently filed a motion to appoint counsel on June 3, 2022. ECF No. 108. The case was reassigned to this Court on May 16, 2023.

---

[1] It appears to the Court that the defendant's projected release date on the BOP website reflects the application of his earned time credits. *See* BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Mar. 18, 2025) [https://perma.cc/9LH8-SHNG]; *see also* ECF Nos. 120, 126, 127.

## II.     LEGAL STANDARD

### A.     Exhaustion

Before the court may consider a motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i), the defendant must exhaust their administrative rights to appeal the Bureau of Prisons' failure to bring a motion on the defendant's behalf. 18 U.S.C. § 3582(c)(1)(A). Alternatively, once 30 days have passed after the defendant requested relief from the warden of their facility, the defendant may file a motion with the court as though they had exhausted their administrative remedies. *Id.*; *see United States v. Muhammad*, 16 F.4th 126, 131 (4th Cir. 2021) (clarifying that defendants may satisfy the exhaustion requirement by waiting 30 days from the date of their initial request to file a motion in the district court, even if the warden has already responded to their request). The exhaustion requirement "is a non-jurisdictional claim-processing rule" and therefore "may be waived or forfeited." *Muhammad*, 16 F.4th. at 130.

### B.     Merits

A court may modify a term of imprisonment under 18 U.S.C. § 3582(c)(1)(A)(i) if, after considering the sentencing factors in 18 U.S.C. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction." *United States v. Hargrove*, 30 F.4th 189, 197-98 (4th Cir. 2022). The overarching purpose of the compassionate release mechanism guides district courts' consideration:

> When Congress authorized district courts, as a matter of discretion, to release an inmate from prison based on extraordinary and compelling reasons, it did so to introduce compassion as a factor in assessing ongoing

3

> terms of imprisonment, authorizing a district court to give greater weight to an inmate's personal circumstances — when sufficiently extraordinary and compelling — than to society's interests in the defendant's continued incarceration and the finality of judgments. Thus, motions for relief under § 3582(c)(1)(A)(i) ask courts to balance the severity of the inmate's personal circumstances, on the one hand, against the needs for incarceration, on the other.

*Id.* at 197. Courts in this district have generally considered the defendant's arguments regarding extraordinary and compelling reasons for sentence reduction first, then balanced the outcome of that analysis against the sentencing factors in section 3553(a). *E.g.*, *United States v. Ogun*, 657 F. Supp. 3d 798 (E.D. Va. 2023); *United States v. Nurani*, No. 2:11-cr-34, 2023 WL 2058649, at *3 (E.D. Va. Feb. 16, 2023).

### i. *Extraordinary & Compelling Reasons*

The Court may reduce a prisoner's sentence under § 3582(c)(1)(A)(i) if it finds "extraordinary and compelling reasons" to do so. The prisoner bears the burden of demonstrating such reasons. *See Hargrove*, 30 F.4th at 195.

The Sentencing Commission has promulgated a policy statement, U.S.S.G. § 1B1.13, which attempts to define what may constitute "extraordinary and compelling reasons." *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020). The policy statement provides a non-exhaustive list of extraordinary and compelling reasons for reducing a sentence:

> (1)    the medical circumstances of the defendant, U.S.S.G. § 1B1.13(b)(1);

> (2)    the age of the defendant, U.S.S.G. § 1B1.13(b)(2);

(3)    family circumstances of the defendant, U.S.S.G. § 1B1.13(b)(3);

(4)    whether the defendant was a victim of abuse while incarcerated, U.S.S.G. § 1B1.13(b)(4);

(5)    "other reasons," U.S.S.G. § 1B1.13(b)(5); or

(6)    an unusually long sentence, if the defendant meets certain conditions, U.S.S.G. § 1B1.13(b)(6).

The Sentencing Commission's policy statement provides that extraordinary and compelling reasons exist in several circumstances related to the defendant's physical health. First, where:

> The defendant is suffering from a terminal illness . . . serious physical or medical condition . . . serious functional or cognitive impairment . . . [or] deteriorating physical or mental health because of the aging process . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13(b)(1)(A–B). Second, where:

> The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(C). And lastly, where:

> . . . (i) The defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;
>
> (ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

5

> (iii) such risk cannot be adequately mitigated in a timely manner.

U.S.S.G § 1B1.13(b)(1)(D)(i–iii).

This amendment remains in line with the Fourth Circuit's approach to requests for compassionate release due to the COVID-19 pandemic. *See United States v. Brown*, No. 21-7752, 2023 WL 5257673, at *5 (4th Cir. Aug. 16, 2023) (unpublished) (stating that the prisoner must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility"); *see also, e.g., Hargrove*, 30 F.4th at 196 (affirming a district court order denying relief after applying this standard); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (unpublished) (same). Thus, this Court will "examine whether the defendant's request for reduction is consistent with the . . . applicable policy statements." *United States v. Malone*, 57 F. 4th 167, 173 (4th Cir. 2023). But ultimately, "district courts are encouraged to consider *any* extraordinary and compelling reasons for release that a defendant might raise." *Id.* at 174 (internal citations and quotation marks omitted, alterations accepted); *see also* U.S.S.G. § 1B1.13(b)(5) ("The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any other reasons described in paragraphs [one] through [four], are similar in gravity . . . .").

The policy statement also clarifies to what extent rehabilitation of the defendant can be considered in the extraordinary-and-compelling-reason analysis. U.S.S.G. § 1B1.13(d). It states that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for the purposes of this policy statement;"

however, rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." *Id.*

### ii.    18 U.S.C. § 3553(a) Factors

After completing the 'extraordinary and compelling reasons' analysis, the Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *United States v. Mumford*, 544 F. Supp. 3d 615, 617–20 (E.D. Va. June 21, 2021). Even if the Court finds extraordinary and compelling reasons to reduce a petitioner's sentence, it may ultimately deny a motion for compassionate release if its analysis of the § 3553(a) factors counsels against release. *Id.* Those factors are:

(1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)    the need for the sentence imposed—

   (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)    to afford adequate deterrence to criminal conduct;

   (C)    to protect the public from further crimes of the defendant; and

   (D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(3)    the kinds of sentences available;

(4)    the kinds of sentence and the sentencing range established [by the Sentencing Commission];

(5)     any pertinent policy statement [issued by the Sentencing Commission] [that is in effect on the date the defendant is sentenced except as provided in section 3742(g)];

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

## III.   ANALYSIS

### A.   Motion to Appoint Counsel & Amendment 821

The defendant requests the Court appoint him representation under "the 404 section of the First Step Act . . . I [g]ot 851 in my case." ECF No. 108. The Court construes this as a reference to Amendment 821 to the sentencing guidelines. Further, embedded in his motion for sentence reduction under 18 U.S.C. § 3582 appears to be an additional request to appoint counsel to determine the validity of his candidacy for a sentence reduction. ECF No. 120 at 7.  As the Court has noted, it has already ruled in the defendant's favor (ECF No. 127) on the First Step Act credit issue outlined in ECF No. 120, so to the extent the petitioner requests counsel on that grounds, his request will be **DENIED AS MOOT**. And to the extent the defendant requests counsel in connection with this motion for compassionate release, Judge Young appointed counsel to file a motion. Therefore, that request will also be **DENIED AS MOOT**.

8

In an abundance of caution, however, the Court will address the merits of a potential request for relief under Amendment 821 and appointment of counsel for the same. Amendment 821 to the United States Sentencing Guidelines eliminates "status points" for individuals with six or fewer criminal history points. *Compare* U.S.S.G. § 4A1.1(e) (2023) with U.S.S.G. § 4A1.1(d) (2022). Whereas before the Amendment an individual was attributed with two additional criminal history points if they committed a new offense while they were "under any criminal justice sentence," U.S.S.G. § 4A1.1(d) (2022), now the Sentencing Guidelines add only one point if the defendant was serving a sentence at the time of the new offense, and the increase applies only to individuals who are already attributed with seven or more criminal history points, U.S.S.G. § 4A1.1(e). At the time of his sentencing, the defendant had four criminal history points and was attributed an additional two criminal history points (for a total of six) because he committed the instant offenses while under supervised release for a prior conviction. ECF No. 41 at ¶¶ 40–41 (SEALED). While the defendant would have two fewer criminal history points were he sentenced today, his criminal history category (III), and thus his guideline imprisonment range, would remain unchanged. Therefore, Amendment 821 cannot afford him relief.

To the extent his request for counsel relates to Amendment 821, there is no constitutional right to counsel to seek a sentence reduction under 18 U.S.C. § 3582(c). *United States v. Legree*, 205 F.3d 724, 730 (4th Cir. 2000) ("A motion pursuant to § 3582(c) is not a do-over of an original sentencing proceeding where a defendant is cloaked in rights mandated by statutory law and the Constitution.") (citation and

quotation marks omitted). "The Court, however, may appoint counsel to a financially eligible person if justice so requires." *United States v. Burrell*, No. 3:04-cr-64, 2023 WL 7726404, at *4 n. 6 (E.D. Va. Nov. 15, 2023) (citing *Legree*, 205 F.3d at 730). Because it is abundantly clear that Amendment 821 does not change the defendant's sentencing and the defendant's motion was sufficient for the Court to determine its legitimacy, justice does not require the appointment of counsel, so the request will be **DENIED** as to Amendment 821.[2]

## B.    Motion for Compassionate Release

### i.    *Exhaustion*

The defendant argues that he has met the exhaustion requirement because he submitted a request for compassionate release to the warden of FCI Fort Dix on December 6, 2020, that was subsequently denied. *See* ECF No. 93 at 12–13; ECF No. 99 at 5. In opposition, the government argues that the defendant has not satisfied the exhaustion requirement for two reasons: (1) the defendant "never applied to the warden of his current facility, [FCI Petersburg Low], for compassionate release," and (2) the defendant advances an additional claim for compassionate release before this Court that he did not assert in his compassionate release request to the warden of FCI Fort Dix. ECF No. 101 at 8. The Court disagrees.

---

[2] Consistent with this District's Internal Procedures for Amendment 821 Retroactivity Cases for the Norfolk and Newport News Divisions of this Court, the Office of the Federal Public Defender provided notice that it did not contest the U.S. Probation Office's conclusion that the defendant was ineligible for relief. ECF No. 123.

The record confirms that the defendant submitted a request for compassionate release to the warden of FCI Fort Dix on December 6, 2020. ECF No. 93 at 12–13; ECF No. 99 at 5.[3] But, as the government points out, the defendant was transferred to FCI Petersburg Low at some point before he filed the instant motions. ECF No. 101 at 3. The government contends that because the defendant has not submitted a new request for compassionate release to the warden of FCI Petersburg Low, his facility at the time the instant motion was filed,[4] he has failed to meet the exhaustion requirement. ECF No. 101 at 8.

> The text of [S]ection 3582 requires only that 30 days lapse from the receipt of a request for compassionate release by the warden of the facility where the defendant is incarcerated. 18 U.S.C. § 3582(c)(1)(A). The text imposes no additional requirement, such as the one the government seeks to insert, *i.e.*, that [the defendant] must file a new request with the warden of [their] facility following a transfer by the BOP.

---

[3] The defendant's motion for compassionate release filed by counsel states that his "request for compassionate release was denied by the warden of FCI Fort Dix on December 6, 2020." ECF No. 99 at 5. The exhibit attached to that motion is dated December 6, 2021. ECF No. 99-2 at 2. Because the BOP's denial of the defendant's request for compassionate release is dated January 8, 2021, the Court will accept the defendant's contention that he filed his request for compassionate release on December 6, 2020. *See id.* at 1.

[4] Between the filing of the defendant's *pro se* motion for compassionate release and the motion filed by counsel, the defendant had apparently been transferred from FCI Fort Dix to FCI Petersburg Low. *See* ECF No. 99 at 3 ("[The defendant] is currently incarcerated at FCI Petersburg Low"). At the time the government filed its opposition, the defendant was still housed at FCI Petersburg Low. ECF No. 101 at 1. Now, according to the BOP database online, the defendant is housed at FCI Loretto. *See* BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited Mar. 10, 2025). The location of the defendant's current facility does not change the Court's analysis. The inquiry here is whether the defendant had to submit a new request for compassionate release to the warden of *any* facility he moved to after FCI Fort Dix in order to satisfy the exhaustion requirement.

*United States v. LeBlanc*, No. 2:17-cr-139, 2022 WL 293246, at *4 (E.D. La. Feb. 1, 2022) (citation omitted). Furthermore, "[t]he emerging consensus among courts which have addressed this question is that a defendant's transfer between facilities does not nullify the defendant's exhaustion of administrative remedies when the defendant filed a request for compassionate release with the warden at a previous facility." *Id.* (citing *United States v. Davidson*, No. 2:16-cr-139, 2020 WL 4877255, at *7 (W.D. Pa. Aug. 20, 2020) (defendant "followed the rules" when he "initiated the compassionate release process with the BOP by filing an administrative request for release with the warden of the facility at which he was then residing," and his "transfer in the interim does not change the fact that the BOP had the first crack at resolving the issue"); *United States v. Hamidu*, No. 2:18-cr-58, 2021 WL 2808721, at *2 (S.D. Ohio July 6, 2021) (collecting cases); *United States v. Doan*, No. 3:14-cr-225, 2021 WL 4819317, at *2 (S.D. Cal. Oct. 15, 2021); *United States v. Porter*, No. 2:18-cr-68, 2021 WL 5989142, at *2 (W.D. Pa. Dec. 17, 2021)). Accordingly, because the defendant filed the instant motion more than 30 days after the warden of FCI Fort Dix received his request for compassionate release, the Court finds that the defendant has met the exhaustion requirement.

The government also contends that the defendant has not satisfied the exhaustion requirement because he advances an additional ground for compassionate release before this Court—his underlying medical condition of obesity—that he did not assert in his compassionate release request to the warden of Fort Dix. ECF No. 101 at 8. The Court also rejects this contention. The Fourth Circuit has explained

12

that, given the alternative 30-day waiting period in the statute, a "defendant is not required to exhaust [their] administrative remedies with the BOP *at all* beyond making the initial request for compassionate release." *United States v. Ferguson*, 55 F.4th 262, 268 (4th Cir. 2022). The *Ferguson* Court saw "no reason to limit [a defendant's] motion for compassionate release in the district court to only those grounds for compassionate release . . . identified in [their] request to the BOP." *Id.* As a result, the government's issue exhaustion argument does not hold water, and the Court finds that the defendant has met the exhaustion requirement.

### ii. Merits

#### a. Extraordinary & Compelling Reasons

To establish extraordinary and compelling reasons that justify release due to the COVID-19 pandemic, the defendant must show "both a particularized susceptibility to [COVID-19] and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling,* 453 F. Supp. 3d 832, 841 (E.D. Va. 2020). The defendant argues that his circumstances are extraordinary and compelling so as to warrant compassionate release for two reasons. First, the defendant argues that he is particularly susceptible to getting seriously ill from COVID-19 because of his obesity and migraines, because of race and gender-based health disparities, and because of his incarceration status. ECF No. 99 at 6–9. Second, the defendant argues that his rehabilitation while incarcerated supports reducing his sentence. ECF No. 99 at 9. The Court finds that none of these grounds meet the 18 U.S.C. § 3582(c)(1)(A)(i) standard.

13

As this and other courts have observed, increased risk of serious illness and death from COVID-19 among racial and ethnic minority groups is due to "[p]ersistent health disparities combined with historic housing patterns, work circumstances, and other factors."[5] "In other words, 'current evidence suggests a correlation, not causation.'" *United States v. Anderson*, No. 2:98-cr-143, 2023 WL 3940117, at *5 (E.D. Va. June 9, 2023) (quoting *United States v. Dimkpa*, No. 1:19-cr-443, 2020 WL 4754901, at *2 (M.D.N.C. Aug. 17, 2020)). For similar reasons, courts have also declined to find that a defendant's sex warrants relief. *Id.* On this basis, the Court finds that the defendant's demographic risk factors for serious illness do constitute extraordinary and compelling reasons for compassionate release.

The CDC advises that obesity "can make you more likely to get very sick from COVID-19" and that "[t]he risk of severe illness from COVID-19 increases sharply with higher BMI."[6] The most recent data available in the record show the defendant's weight was 237 pounds and his height was 70 inches, meaning his BMI was 34, which meets the CDC's definition of obesity. ECF No. 99-3 (SEALED) at 1.[7]

---

[5] CDC, *CDC COVID-19 Response Health Equity Strategy*, https://archive.cdc.gov/#/details?url=https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/cdc-strategy.html (last visited Mar. 18, 2025) [https://perma.cc/2GDM-JHEN].

[6] CDC, *People with Certain Medical Conditions and COVID-19 Risk Factors*, https://www.cdc.gov/covid/risk-factors/?CDC_AAref_Val=https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Mar. 18, 2025) [https://perma.cc/YPP4-MB7D].

[7] *Supra* note 6 (CDC defines "obesity" as having a BMI of 30 or higher, but under 40).

However, other factors related to the defendant's health counsel against a conclusion that he faces a particular risk of serious illness. The defendant is 38 years old, which places him outside the age range that carries increased risk of serious illness from COVID-19, as recognized by the CDC.[8] Moreover, the defendant refused to take the Moderna vaccine.[9] ECF No. 99 at 6. Courts have considered a defendant's "refusal to be vaccinated against COVID-19 [as] a factor in assessing any concern regarding defendant's health conditions." *United States v. Mouzon*, No. 1:16-cr-299, 2022 WL 1289668, at *13 (D. Md. Apr. 29, 2022). Furthermore:

> Courts now widely recognize that a refusal to take preventative measures to protect oneself from COVID-19 undermines any assertion that the risk of viral infection constitutes an extraordinary and compelling reason justifying release . . . . Any decision to the contrary would create a perverse incentive in favor of declining the vaccine, undermining the BOP's efforts to protect its incarcerated population and to allow prison operations to return to some degree of normalcy in the coming months.

*Id.* (citing *United States v. Ayres*, No. 1:04-cr-4, 2021 WL 2352322, at *2 (D. Md. June 9, 2021) (collecting cases); *United States v. Manon*, No. 2:16-cr-460, 2022 WL 408958, at *3 (D.N.J. Feb. 10, 2022); *United States v. Carter*, No. 3:19-cr-356, 2022 WL 272196, at *2–3 (N.D. Ohio Jan. 28, 2022); *United States v. Culp*, No. 2:92-cr-81058, 2021 WL 5834312, at *2 (E.D. Mich. Dec. 9, 2021); *United States v. Highnight*, No.

---

[8] *See supra* note 6.

[9]      CDC, *Overview of COVID-19 Vaccines*, https://archive.cdc.gov/#/details?url=https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/overview-COVID-19-vaccines.html (last visited Mar. 18, 2025) [https://perma.cc/X2Y8-H47Z].

4:14-cr-129, 2021 WL 5299249, at *6 (E.D. Tex. Nov. 12, 2021) *United States v. Brice*, 1:07-cr-261, 2021 WL 1926713, at *3 (D. Md. May 13, 2021); *United States v. Siegel*, 1:03-cr-393, 2021 WL 962491, at *2 (D. Md. Mar. 15, 2021)). The defendant offers no explanation for his refusal.[10] *See Mouzon*, 2022 WL 1289668, at *13 (taking into account that the defendant offered no explanation for their refusal of a COVID-19 vaccine).

The defendant also asserts that his history of "severe migraines" warrants compassionate release. ECF No. 99 at 6. The CDC does not advise that migraines impact the likelihood that the defendant will contract COVID-19. *See supra* note 4. So, the defendant's history of migraines does not bolster his request for compassionate release on COVID-19 susceptibility grounds. Further, the record indicates that the defendant's "migraine condition is a chronic condition that can be managed in prison [and thus is] not a sufficient basis for compassionate release." *United States v. Stewart*, No. 3:15-cr-103, 2022 WL 2070616, at *3 (E.D. Va. June 8, 2022) (quotation marks omitted). The defendant has "not established that his medical needs cannot be met while incarcerated." *Id.*

---

[10] In support of his motion, the defendant reports that he "previously contracted COVID-19 and . . . appears to have recovered[.]" ECF No. 99 at 6. But previously contracting the COVID-19 virus, alone, does not warrant compassionate release. "To be sure, numerous courts in this District have granted compassionate release or sentence reductions to individuals who have contracted, and recovered from, COVID-19. However, in those cases the defendants also suffered from other medical conditions that put them at enhanced risk of suffering from severe illness from COVID-19." *United States v. Sejour*, No. 1:18-cr-141, 2020 WL 7043862, at *7 (D. Md. Nov. 30, 2020). Here, as explained below, the defendant fails to do so.

Taken together, the defendant's asserted health conditions and demographic factors do not pose a particularized risk of serious illness from COVID-19 such that relief is warranted.

This conclusion is consistent with the Sentencing Commission's guidance. The defendant is not "suffering from a terminal illness;" he has not demonstrated that he has a "serious physical or medical condition" that "substantially diminishes" his ability "to provide self-care;" he does not have a "serious functional or cognitive impairment;" and his "physical or mental health" is not "deteriorating . . . because of the aging process." U.S.S.G. § 1B1.13 cmt. n. 1 at (A), (B). Nor is the defendant "at least 65 years old" or "experiencing a serious deterioration in physical or mental health because of the aging process." *Id.* at (b)(2). These factors, though not dispositive, counsel against issuing relief.

Further, the defendant is not at a particularized risk of contracting the disease at his prison facility, FCI Loretto. There are currently three positive cases of COVID-19 among inmates.[11] In addition, 1,358 inmates have been vaccinated against the virus.[12]

Finally, the defendant's record of rehabilitation does not constitute an extraordinary and compelling reason to reduce his sentence. *See* ECF No. 99 at 9–12.

---

[11]    BOP, *BOP COVID-19 Statistics*, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited Mar. 18, 2025) [https://perma.cc/W4HX-9BX7].

[12] *Supra* note 11.

The Court acknowledges that the defendant has made considerable rehabilitative efforts while incarcerated. He has enrolled in educational courses and had a relatively clean behavioral record between 2017 and the filing of the instant motion. ECF Nos. 99-5, 99-6, 99-7. However, the policy statement clarifies that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason," but rather "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). Here, the defendant has not identified other circumstances that qualify as extraordinary and compelling reasons for a sentence reduction. Thus, his rehabilitation alone cannot justify his release. While the defendant's statements that he "has grown to understand and appreciate the seriousness of his crime," and that he "is remorseful . . . and hopes to make a positive re-entry into society," ECF No. 93 at 19, are well received, the Court finds that this alone does not tip the scale in favor of granting compassionate release. *See* U.S.S.G. § 1B1.13(d).

Therefore, for all the reasons stated above, the defendant has failed to demonstrate that there are extraordinary and compelling reasons that warrant compassionate release.

> b.    *18 U.S.C. § 3553(a) Factors*

Even if the defendant had demonstrated extraordinary and compelling reasons such that compassionate release might be warranted, the factors enumerated in 18 U.S.C. § 3553(a), when viewed in light of the health and circumstances of the defendant as discussed above, counsel against issuing relief.

The "nature and circumstances of the offense" for which the defendant was convicted are serious. The defendant sold approximately 110.65 grams of heroin for a total of $10,000 and was on his way to sell approximately 8 ounces of heroin for $2,300 per ounce when he was stopped by state police and found with 36.9142 grams of heroin and 1.2982 grams of oxycodone in his possession. ECF No. 41 ¶¶ 7–9. The defendant was attributed with 226.8 grams of heroin and 1.2982 grams of oxycodone. *Id.* Given the "seriousness of the offense," the sentence imposed remains appropriate to "promote respect for the law," "provide just punishment for the offense," and "afford adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2).

The "kinds of sentences available" and the "sentencing range" also counsel against granting compassionate relief. The defendant's sentence on Count One was the mandatory minimum, and his sentences on all the other counts run concurrent with the sentence on Count One. ECF No. 50. Given that the defendant's sentence complies with the statutory minimum for his offense, this factor does not weigh in favor of granting compassionate release.

Finally, the Court has considered the "history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court has looked at the defendant's background as a whole, including whether the passage of time has changed the balance that the Court should strike in its review of the factors and the defendant's motion. No single fact in the defendant's background—whether positive or negative— swayed the Court's determination as to the § 3553(a) analysis. After weighing the

factors enumerated in § 3553(a) and the practical implications of early release, the Court finds that a sentence reduction is not warranted.[13]

In sum, the Court concludes that the sentence currently imposed is "sufficient, but not greater than necessary" and that the factors enumerated in § 3553(a) counsel against reducing the defendant's sentence.

## IV.    CONCLUSION

The Court finds that the defendant has not met his burden of showing extraordinary and compelling reasons that warrant a reduction in his sentence. The Court also finds that the sentencing factors under 18 U.S.C. § 3553(a) weigh against granting the defendant's motion. Accordingly, the defendant's Motion for Compassionate Release (ECF No. 99) is **DENIED**.

If the Defendant sought relief under Amendment 821, any such relief is also **DENIED**.

---

[13] The Court has also reviewed the defendant's release plan. The defendant reports a plan to live with his mother, who will provide him with transportation, and that he will "obtain gainful employment and live a lawful life." ECF No. 99 at 11–12. The Court commends the defendant for "maintain[ing] close relationships [with] his family in the outside world." ECF No. 99 at 12–13. But, the defendant's release plan, when considering the other necessary factors, does not alter this Court's determination that compassionate release is not warranted.

The defendant's Motion to Appoint Counsel (ECF No. 108) is **DENIED** to the extent it relates to Amendment 821 and **DENIED AS MOOT** to the extent it relates to the First Step Act or the Motion for Compassionate Release.

The Clerk is **DIRECTED** to provide a copy of this Opinion and Order to the defendant, the United States Attorney's Office, and all counsel of record.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Newport News, Virginia
March 18, 2025